NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAZZ PHOTO CORP., through its Liquidating Trustee BRIAN T. MOORE,<br><br>    Plaintiff,<br><br>    v.<br><br>DREIER LLP, f/k/a DREIER & BARITZ LLP, JOHN CROSSMAN and KAPLAN & GILMAN, L.L.P.,<br><br>    Defendants. | CIVIL ACTION NO. 05-5198 (DRD)<br><br><br><br>OPINION |

Appearances

BUDD LARNER, P.C..
Peter J. Frazza, Esq.
Donald P. Jacobs, Esq.
Allen L. Harris, Esq.
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
    *Attorneys for Plaintiff*

MARSHALL, DENNEHY, WARNER, COLEMAN & GOGGIN
John L. Slimm, Esq.
Woodland Falls Corporate Park, Ste 300
200 Lake Drive East
Cherry Hill, NJ 08002
    *Attorneys for Defendants Dreier LLP and John Crossman*

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Thomas F. Quinn, Esq.
John P. O'Tool, Esq.
33 Washington St
Newark, NJ 07102
    *Attorneys for Defendant Kaplan, Gilman, Gibson & Dernier, L.L.P., f/k/a Kaplan & Gilman, L.L.P.*

JOHN CROSSMAN, Esq.
c/o Zukerman, Gore & Brandeis, L.L.P.
875 Third Avenue, 28th Floor
New York, New York 10022
    *Pro Se Defendant*


### *OPINION*

### DEBEVOISE, Senior District Judge

The Plaintiff in this case is Jazz Photo, Inc. ("Jazz"), through its liquidating trustee Brian T. Moore. Jazz is presently undergoing liquidation under the supervision of the United States Bankruptcy Court for the District of New Jersey. Jazz's petition for Chapter 11 bankruptcy was the direct result of a verdict of approximately $30 million entered against it in the patent infringement action, Fuji Film Co. v. Jazz Photo Corp., et al ("The Fuji action"). The Defendants in this case are the law firm of Dreier LLP, also known as Dreier & Baritz ("Dreier"), John Crossman, Esq. ("Crossman"), and the law firm of Kaplan & Gilman, L.L.P. ("Kaplan & Gilman"). The Defendants represented Jazz in the Fuji action. Jazz, through its liquidating trustee, now sues Defendants for alleged malpractice committed while representing Jazz in that case. Jazz also seeks a declaratory judgement that it does not owe Defendants (as unsecured creditors in the Bankruptcy Court) any attorneys fees for representing Jazz in the Fuji action.

On December 12, 2005, this court withdrew the reference to the Bankruptcy Court of this malpractice action. Presently before the court is Defendants' motion for partial dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, for partial summary judgment pursuant to Fed. R. Civ. P. 56(b).

Defendants challenge Jazz's claim that they committed professional malpractice for failing to challenge in the Fuji action the retroactive application of the Federal Circuit's decision in Jazz Photo Corp. v. International Trade Commission, 264 F.3d 1094 (Fed. Cir. 2001) ("Jazz v. ITC"). For the reasons set forth below, Defendants' motion will be granted.

*FACTS*

I.      The ITC Proceeding

In 1998, Fuji Film, Ltd. ("Fuji") filed a complaint with the International Trade Commission ("ITC") accusing Jazz and twenty-six other respondents with patent infringement in violation of the Tariff Act of 1930 as amended ("Tariff Act"). A hearing was held before an Administrative Law Judge ("ALJ"), who issued a detailed Final and Initial Recommendation Determination ("IRD") to the ITC. Upon review of the IRD, the ITC adopted the ALJ's finding that Jazz and the other respondents had violated the Tariff Act by importing previously used Single Use Cameras ("SUCs") also known as Lens Fitted Film Packages ("LFFPs"), which were refurbished in various overseas facilities before being transported into the United States for resale/ reuse. Jazz's business was collecting spent "disposable" cameras and reloading them with new film, batteries, and/or other parts so they could be sold again. The ITC found that Jazz's business constituted prohibited "reconstruction" as opposed to permissible "repair." As a result of the ITC's decision, Jazz was prohibited from importing, marketing, distributing, offering for sale, selling or otherwise transferring any patent infringing LFFPs.

Jazz along with two other respondents, Dynatec International, Inc. ("Dynatek"), and Opticolor, Inc. ("Opticolor"), appealed the ITC's decision on the repair/ reconstruction issue to

3

the Court of Appeals for the Federal Circuit, which reversed in part and affirmed in part the ITC's decision. Whereas the ITC had found the refurbishing process to be impermissible reconstruction, the Federal Circuit found it to be permissible repair. The ITC did not address the question of sales outside the United States, but the Federal Circuit held that the permissible repair was not a patent violation only if the first sale of the LFFP occurred in the United States. The Court stated:

> The judgment of patent infringement is reversed with respect to LFFPs for which the patent right was exhausted by first sale in the United States, and that was permissibly repaired. Permissible repair is limited, as discussed herein, to the steps of removing the cardboard cover, cutting open the casing, inserting new film and film container, resetting the film counter, resealing the casing, and placing the device in a new cardboard cover. Included in permissible repair is the replacement of the battery in flash cameras and the winding wheel in the cameras that so require. For these products the Commission's orders are vacated.
>
> LFFPs whose prior sale was not in the United States, or LFFPs remanufactured by procedures more extensive than those we hold to constitute repair, or whose remanufacturing procedures were withheld or insufficiently disclosed to the Commission, remain subject to the Commission's orders. For these products the Commission's orders are affirmed.

Jazz v. ITC, 264 F.3d at 1110-11. The Court applied the "first sale doctrine" in affirming the ITC's ruling of patent infringement for cameras first sold outside of the United States. Id. at 1105. It held that in order for the patent right to be exhausted by first sale (thereby allowing a purchaser to exercise his right to permissible repair), the first sale must have been made in the United States." Id. at 1105. The Court also commented that "United States patent rights are not exhausted by products of foreign provenance." Id. The Court then remanded the matter to the ITC for re-application of the law in conformance with the Court's opinion.

4

II.     The Fuji Action

Five days before the Commission issued its opinion in Jazz v. ITC, and prior to Jazz's appeal to the Court of Appeals for the Federal Circuit, Fuji filed its complaint in the Fuji action. Fuji asserted three counts against Jazz, seeking damages and injunctive relief for patent infringement. The matter was stayed pending the outcome of Jazz v. ITC. After the Federal Circuit's decision in Jazz v. ITC, the Fuji action resumed and was brought to trial in 2003.

As part of a mutual effort to decrease litigation costs, and to avoid undue delay, the parties had entered into a stipulation whereby the parties would litigate that case on the basis of the record in the ITC Proceeding. However, the final Pretrial Order stated: "The parties agree that [the] issues could change slightly, depending upon the outcome of the [Jazz v. ITC] appeal...[T]he parties may need to update the Order promptly at the time the appeal is decided." Jazz alleges, and, it will be assumed, correctly, that it repeatedly asked defendants to argue that it would be unfair to apply the first sale aspect of Jazz v. ITC to Jazz in the Fuji action. As to repair/ reconstruction issues however, the parties' stipulation precluded new discovery beyond the ITC record.

After the trial concluded the judge issued a post-trial opinion outlining the findings and results. See Fuji Photo Film Co. v. Jazz Photo Corp., 249 F. Supp. 2d 434 (D.N.J. 2003). Jazz was found to have sold 40,099,369 refurbished LFFPs in the United States between 1995 and 2001. Jazz had the burden to prove the affirmative defense of repair; however, it only provided the Court with evidence concerning the refurbishment processes at three of its eight suppliers of LFFPs. As a result, Jazz was found to have permissibly repaired the LFFPs from only those three suppliers (totaling 4,099,937 LFFPs), but failed to prove the affirmative defense of repair with

respect to the 36,089,432 cameras produced by the five other suppliers.  The cameras from the five other suppliers were all held to be impermissibly reconstructed.

The Court, in accordance with the Federal Circuit's opinion, next had to decide how many of the permissibly repaired cameras were made from empty shells first sold in the United States.  In reviewing the Jazz v. ITC opinion, the Court noted that prior to that case, the Federal Circuit had not previously been called upon to address the distinction between the Supreme Court's decision in Boesch v. Graff, 133 U.S. 697 (1890) and the subsequent decisions of several trial and appellate courts.  In Boesch the Court held that the sale or use in the United States of a patented product purchased abroad, even from an authorized seller of the product in a foreign country, constitutes patent infringement.  The District Court noted, however, that in subsequent cases courts distinguished Boesch because it left open the question whether a foreign sale by the holder of both United States and foreign patents (or its licensee with a license to sell in both countries) exhausts the patentee's rights under the United States patent.

> Several courts distinguished Boesch on this ground, concluding that on the one hand, the foreign sale of a patented article by the patentee (or licensee) constituted exhaustion, while on the other hand the patentee retained its monopoly over items sold abroad by a licensee with no authority to sell the product in the United States.

Fuji v. Jazz, 249 F. Supp. 2d at 449-50.  The District Court noted that the record on appeal in Jazz v. ITC placed this issue before the Federal Circuit, which held that United States patent rights are not exhausted by products of foreign provenance.  "Our decision applies only to LFFPs for which the United States patent right has been exhausted by first sale in the United States."  Id. at 450 (quoting Jazz v. ITC).

The District Court, relying on the jury verdict found that "Jazz has proven that 4,009,937

6

of the cameras [Jazz] sold from 1995 to August 21, 2001 were permissibly repaired." Fuji Photo, 249 F. Supp. 2d at 448. It also found that Jazz "failed to satisfy its burden to prove the affirmative defense of permissible repair with respect to the remaining 36,089,432 cameras at issue." Id.

The District Court next observed that its "finding of repair with respect to approximately 4 million cameras does not end the inquiry, because a refurbished disposable camera infringes unless it was permissibly repaired from an empty camera shell first sold in the United States." Id. at 448-49 (citations omitted). Because the jury had found that approximately 9.5 percent of the cameras sold by Jazz were refurbished from cameras first sold in the United States, the District Court held that 9.5 percent of the 4,009,937 permissibly repaired cameras sold by Jazz (380,944) were refurbished from cameras first sold in the United States. The remaining 39,718,425 refurbished cameras sold by Jazz were held to infringe Fuji's patent. Id. at 451-52.

Jazz appealed the District Court's ruling to the Federal Circuit. See Fuji v. Jazz Photo Corp., 394 F.3d 1368 (Fed. Cir. 2005). Among other issues, Jazz appealed the District Court's application of the first sale doctrine. Jazz argued that the District Court misconstrued the Federal Circuit's holding regarding exhaustion, and, in the alternative, even if the District Court properly construed that holding, argued that its effect should have been purely prospective.[1] Id. In support of its alternative argument, Jazz relied on the Supreme Court's decision in Chevron Oil Co. v. Huson, 404 U.S. 97, 106 (1971), which limited the retroactive effect of a judicial decision when that decision establishes a new principle of law, either by overruling clear past precedent

---

[1] With regards to the Jazz's primary argument, the Federal Circuit held that "the District Court correctly applied this court's exhaustion precedent." Id. at 376-77.

on which litigants may have relied or decides an issue of first impression whose resolution was not clearly foreshadowed. Jazz contended that the Federal Circuit's explanation of the application of exhaustion to foreign sales decided a matter of first impression not clearly foreshadowed. In declining to consider Jazz's argument, the Federal Circuit held that:

> This court need not reach the merits of this prospective effect argument because Jazz in effect waived this argument by failing to raise it in a form that requested or required a decision from the district court. Jazz contends that it preserved this issue for appeal by moving for a stay pending appeal: "It seems unlikely-and certainly unfair-that the Federal Circuit could have intended [the 'exhaustion by first sale' issue], which was not even raised by Fuji in the ITC or the Federal Circuit, to result in a holding with devastating retroactive effect." A few phrases in a stay motion, however, are not sufficient to apprise the district court that it must address another point of law. Indeed, the district court in its extensive opinion did not address the retroactive effect of the *Jazz* exhaustion doctrine. This court observes that the district court provided a well reasoned and thorough analysis on a multitude of important issues in this case. The absence of any discussion of retroactivity strongly suggests that Jazz did not bring this issue to the trial court's attention in a manner that requested or required analysis. The exhaustive historical review of the repair/reconstruction doctrine is but one example of the district court's special care to resolve issues presented by the parties. Accordingly, this court declines Jazz's invitation to consider its retroactive effect argument for the first time on appeal. Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

Fuji v. Jazz, 394 F.3d at 1377.

III.     Bankruptcy Proceeding and Malpractice Action

Jazz was forced to file for Chapter 11 Bankruptcy as a direct result of the approximately $30 million judgment entered against it. The Bankruptcy Court appointed Brian T. Moore as Jazz's liquidation trustee. The present case is a malpractice action that Jazz's liquidating trustee brought against the attorneys who represented Jazz in the Fuji action. The amended complaint

alleges that the three defendants, Dreier, Crossman, and Kaplan & Gilman, committed legal malpractice and negligence in their representation of Jazz in the earlier action. That claim was originally filed in the State Court, then upon removal to this Court was referred to the Bankruptcy Court. The reference to the Bankruptcy Court was eventually withdrawn by this Court.

In its Amended Complaint Jazz specifies five alleged acts or omissions on the part of Defendants:

> 1. Entering into a stipulation that limited Jazz's proofs to those which were presented in an administrative proceeding before the United States International Trade Commission (ITC or Commission), thereby impairing Jazz's ability to prove the critical affirmative defense of permissible repair;
>
> 2. Failing to argue in the District Court that the Federal Circuit's ruling in Jazz v. ITC should be given only prospective effect, thereby failing to preserve that argument for appeal;
>
> 3. Failing to present proofs at trial that were readily available and of obvious and critical importance , which would have prevented the district court's conclusion - affirmed on appeal - that Jazz failed to prove the process used to refurbish 90% of the cameras at issue;
>
> 4. Failing to present proof as to the number of cameras refurbished by two of Jazz's suppliers when such proof was important and available; and
>
> 5. Failing to properly prepare witnesses before they were called to testify at trial.

(Am. Compl. ¶ 2).

Jazz asserts claims for common law negligence, demanding judgment against defendants jointly and severally for damages, costs, and attorneys' fees in addition to reimbursement of attorneys fees and expenses that Defendants have received and recovery on account of attorneys fees and expenses paid to third parties. (Am. Compl. ¶¶ 48-64). Additionally, Jazz asserts that

Dreier has filed an unsecured claim against Jazz in the Bankruptcy Court for fees and disbursements due and owing. Lastly, Jazz demands a declaratory judgement that it does not owe any defendant any money as an unsecured creditor in Bankruptcy Court. (Am. Compl. ¶¶ 59-61).

Presently before the Court is Defendants' motion for partial dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, partial summary judgment pursuant to Fed. R. Civ. P. 56(b). Defendants argue that Jazz's claim of malpractice for Defendants' failure to assert the "purely prospective effect" of the Federal Circuit's ruling in Jazz v. ITC is based on overruled and/or inapplicable law. The Amended Complaint and other materials that may be considered on a motion to dismiss permit the Court to treat this motion as a motion for partial dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

A.      Standard for Dismissal - 12(b)(6)

Defendants argue that Plaintiff's complaint should be dismissed pursuant to Fed. R.Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Rule 12(b)(6) states in part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ...(6) failure to state a claim upon which relief can be granted...

Pursuant to Rule 12(b)(6), a complaint shall be dismissed for failure to state a claim upon

which relief can be granted only if a court finds "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980); Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989). Allegations contained in the complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and the plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). The court is limited to facts contained and alleged in the complaint and may not consider facts raised for the first time by parties in legal briefs. Hauptmann v. Wilentz, 570 F. Supp. 351, 364 (D.N.J. 1983), aff'd without opinion, 770 F.2d 1070 (3d Cir. 1985). The Court will accept the alleged facts as true and view them in the light most favorable to the non-moving party. Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000). The question the court must answer is not whether Plaintiff will prevail, but rather whether there are any circumstances that would entitle him to relief. Hishon v. Spalding, 467 U.S. 69, 73 (1984). To resolve a 12(b)(6) motion, a court may properly consider documents incorporated in the Complaint and public records, including judicial proceedings, in addition to the allegations in the complaint. Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3rd Cir. 1999) (citations omitted).

     Defendants argue that the portion of Plaintiff's complaint accusing them of malpractice for failing to argue the "prospective only" effect of the Jazz v. ITC ruling is based on the case of Chevron Oil Co. v. Huson, 404 U.S. 97 (1971), a case Defendants claim has been overruled and/or does not apply to the facts of Fuji v. Jazz. Additionally, Defendants argue that the Federal Circuit in Jazz v. ITC did not announce a new rule of law, which is Jazz's basis for claiming that

there should have been "prospective only" application.

B.     Chevron

In <u>Chevron</u>, the United States Supreme Court explained the three part test for determining whether a judicial mandate should have non-retroactive (prospective only) effect: (1) the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the Court must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation; and (3) the Court must weigh the inequity imposed by retroactive application, for "(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of non-retroactivity." 404 U.S. at 106-107.

Jazz alleges that the Federal Circuit's ruling in <u>Jazz v. ITC</u> announced a new rule of law and that Defendants committed malpractice by failing to argue for non-retroactive application when litigating <u>Jazz v. Fuji</u>.  The first question is whether the Federal Circuit created a new rule of law.  If there was no new rule of law created, then further analysis of <u>Chevron</u> is unnecessary, because Defendants could not be at fault for failing to argue prospective only application of a previously established rule of law.  With regard to the refurbished cameras imported by Jazz that were first sold overseas, the Court of Appeals for the Federal Circuit explained:

> Underlying the repair/reconstruction dichotomy is the principle of exhaustion of the patent right. The unrestricted sale of a patented article, by or with the

> authority of the patentee, "exhausts" the patentee's right to control further sale and use of that article by enforcing the patent under which it was first sold. In <u>United States v. Masonite Corp.</u>, 316 U.S. 265, 278, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942), the Court explained that exhaustion of the patent right depends on "whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article." <u>See, e.g.</u>, <u>Intel Corp. v. ULSI Sys. Tech., Inc.</u>, 995 F.2d 1566, 1568, 27 USPQ2d 1136, 1138 (Fed.Cir.1993) ("The law is well settled that an authorized sale of a patented product places that product beyond the reach of the patent.") Thus when a patented device has been lawfully sold in the United States, subsequent purchasers inherit the same immunity under the doctrine of patent exhaustion. However, the prohibition that the product may not be the vehicle for a "second creation of the patented entity" continues to apply, for such re-creation exceeds the rights that accompanied the initial sale.
>
> Fuji states that some of the imported LFFP cameras originated and were sold only overseas, but are included in the refurbished importations by some of the respondents. The record supports this statement, which does not appear to be disputed. United States patent rights are not exhausted by products of foreign provenance. To invoke the protection of the first sale doctrine, the authorized first sale must have occurred under the United States patent. <u>See</u> <u>Boesch v. Graff</u>, 133 U.S. 697, 701-703, 10 S.Ct. 378, 33 L.Ed. 787 (1890) (a lawful foreign purchase does not obviate the need for license from the United States patentee before importation into and sale in the United States). Our decision applies only to LFFPs for which the United States patent right has been exhausted by first sale in the United States. Imported LFFPs of solely foreign provenance are not immunized from infringement of United States patents by the nature of their refurbishment.

<u>Jazz v. ITC</u>, 264 F.3d at 1105.

It is unclear whether the District Court in <u>Fuji v. Jazz</u>, believed this was a new rule of law.  In analyzing and applying the <u>ITC</u> decision, the Court commented:

> As the Federal Circuit noted in <u>Jazz v. ITC</u>, however, there is a significant exception to this general principle of exhaustion by first sale: A patentee's *United States* patent rights are not exhausted unless the patented product is first sold "under the United States patent." <u>Jazz v. ITC</u>, 264 F.3d at 1105. This exception traces its origins to the Supreme Court's decision in <u>Boesch v. Graff</u>, in which the Court held that the sale or use in the United States of a patented product purchased abroad, even from an authorized seller of the

13

> product in the foreign country, constitutes patent infringement. See 133 U.S. at 702-03, 10 S.Ct. 378.
>
> The patentee in Boesch owned both United States and German patents for lamp burners. The defendant acquired the burners in Germany from an individual who was not licensed by the patentee to make or sell the product in either country, but was permitted to make or sell the burners under German law. Id. at 379-80, 10 S.Ct. 378. The Supreme Court found the defendant's sale of the product in the United States to be infringement. Id. at 380, 10 S.Ct. 378.
>
> The Supreme Court's decision in Boesch left open the question whether a foreign sale by the holder of both United States and foreign patents (or its licensee with a license to sell in both countries) "exhausts" the patentee's rights "under the United States patent." See 5 Chisum on Patents § 16.05[3][a][ii]. Several courts thereafter distinguished Boesch on this ground, concluding that, on the one hand, the foreign sale of a patented article by the patentee (or a licensee) constituted exhaustion, while on the other hand the patentee retained its monopoly over items sold abroad by a licensee with no authority to sell the product in the United States. (citations omitted).
>
> Prior to its decision in Jazz v. ITC, the Federal Circuit was never called upon to address this distinction. (footnote omitted). The record on appeal in Jazz v. ITC, however, placed the issue before the Circuit, which held that in order for a sale to be "under the United States Patent" such that the patentee's rights are exhausted, the sale must be "in the United States." 264 F.3d at 1105. According to the Court:
>
> "**United States patent rights are not exhausted by products of foreign provenance.** To invoke the protection of the [exhaustion by first sale] doctrine, the authorized first sale must have occurred under the United States patent" [citing Boesch ]... Thus, the Federal Circuit has ruled that Fuji's patent rights are exhausted only with respect to cameras refurbished from shells first sold in the United States. This court is bound by that ruling.

Fuji v. Jazz, 249 F. Supp. 2d at 449-450.  The District Court further noted that, in Jazz v. ITC

Jazz sought a stay of the Federal Circuit's ruling, rehearing *en banc,* and certiorari to the

Supreme Court on the exhaustion issue.  Jazz argued that the Federal Circuit improperly

changed the law, and that foreign exhaustion should remain viable if the patented article is

14

sold by the holder of a license in both the United States and the foreign country. The District Court reasoned that because Jazz's various petitions were denied, the Circuit's decision was therefore *stare decisis* in the Fuji action. Id.

It can be argued from all this that the Federal Circuit's ruling in Jazz v. ITC most likely decided "an issue of first impression whose resolution was not clearly foreshadowed." It can also be argued that the Federal Circuit simply reapplied the Boesch rule. For the purpose of the present motion it will be assumed that the Federal Circuit sufficiently modified the original holding in Boesch for the result to be considered "a new rule of law." The question then becomes whether Chevron precludes applying this rule in the Fuji action.

C.   Retroactivity

In their moving papers, Defendants argue that the Supreme Court has overturned the rule of non-retroactive application of new law that was established in Chevron. Defendants cite a trilogy of Supreme Court cases to support this contention. In James B. Beam Distilling Co. v. Georgia, 201 U.S. 529, 543-44 (1991), the Court held that "[o]nce a retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. The applicability of rules of law is not to be switched on and off according to individual hardship... when the Court has applied a rule of law to the litigants of one case it must do so with respect to all others not barred by procedural requirements or *res judicata*." In Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 98 (1993), the Court eliminated the equity and reliance elements in determining the choice of law applied to a

15

particular case. "The legal imperative to apply a rule of federal law retroactively after the case announcing the rule has already done so must prevail over any claim based on a Chevron Oil analysis." In Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 753 (1995), the Court confirmed that "Harper overruled Chevron Oil insofar as the case (selectively) permitted the prospective-only application of a new rule of law."

Defendants note that the holding in Jazz v. ITC applied not only to Jazz, but also to the other companies importing refurbished LFFPs, Dyantec and Opticolor. Those companies were subject to the cease and desist order imposed upon Jazz, and were subject to the Federal Circuit's reversal, which applied the "new" application of the first sale doctrine. Defendants argue that under the law as it has evolved subsequent to Chevron, because Jazz v. ITC applied to Jazz, Dynatec, and Opticolor in that action, it had to be applied to Jazz in the Fuji action as well.

Plaintiff's contention that certain portions of the Chevron ruling remain in effect, is rejected in the most recent application of Chevron. As stated in Crowe v. Balduc, 365 F.3d 86, 93-94 (1st Cir. 2004), a "narrow equitable exception" to the general rule is all that remains of the Chevron ruling, and selective prospectivity is not permissible:

> The exception works along the following lines. A court in a civil case may apply a decision purely prospectively, binding neither the parties before it nor similarly situated parties in other pending cases, depending on the answers to three questions. First: does the court's decision announce a new and unexpected rule of law, by, say, overruling settled precedent on which the parties may have relied? Second: does the history of the jurisprudence in the affected area of the law, together with the new rule's purpose and effect, counsel for or against retroactive application? Third: would retroactive application give rise to a substantial inequity? Chevron Oil, 404 U.S. at 106-07, 92 S.Ct. 349. Selective prospectivity, however, is not permissible; if a

> new rule is applied to the parties in the rule-creating case, then it must be applied retroactively to similarly situated parties in all pending cases. <u>Harper v. Va. Dep't of Tax.</u>, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). In a civil case, then, a court has only two available options: pure prospectivity or full retroactivity. <u>Glazner v. Glazner</u>, 347 F.3d 1212, 1218 (11th Cir.2003) (en banc); <u>George v. Camacho</u>, 119 F.3d 1393, 1399 n. 9 (9th Cir.1997) (en banc).

In <u>Jazz v. ITC</u>, the Federal Circuit noted that "[o]ur decision applies only to LFFP's for which the United States patent right has been exhausted by first sale in the United States. Imported LFFPs of solely foreign provenance are not immunized from infringement of United States patents by the nature of their refurbishment." 264 F.3d at 1105. This narrowed the Federal Circuit's reversal of the ITC's decision and explained the "new rule of law" on which Jazz bases the relevant portion of its complaint. That rule was initially applied to the three respondents which had taken the appeal of the original ITC decision. Those three respondents were Jazz, Dynatec, and Opticolor. If this rule of law was applied to them, then granting prospective-only application of the rule in <u>Fuji v. Jazz</u> would have been impermissible under the case law developed after <u>Chevron</u>. The Court has only two available options: "pure prospectivity or full retroactivity." <u>Glazner</u>, 347 F.3d at 1218. The ruling in <u>Jazz v. ITC</u> applied not only to Jazz, but to the other respondents as well. Any argument for prospective-only application would have been without merit.

As a result, Defendants could not have committed malpractice for failing to argue an inapplicable rule of law. Plaintiffs complaint, insofar as it alleges malpractice for Defendants' failure to argue for prospective-only application of the Federal Circuit's ruling in <u>Jazz v. ITC</u> fails to state a claim and will be dismissed on this basis.

17

## *CONCLUSION*

For the reasons stated above, the Court will grant Defendants motion to dismiss for failure to state a claim that portion of Jazz's complaint alleging that Defendants committed professional malpractice by failing to assert in the <u>Fuji</u> action the defense that the Federal Circuit's application of the first sale doctrine should be given prospective effect only.

                                                      /s/ Dickinson R. Debevoise
                                                        Dickinson R. Debevoise, U.S.S.D.J.

March 15, 2006